UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHABBIR CHOUDHURY,

        Plaintiff,                            **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)**

        -against-

RECEIVABLES PERFORMANCE MANAGEMENT LLC,

                                       **Docket No.**: 17cv5398
                                       Jury Trial Demanded

        Defendant,
_____/

1. Robo-calls are the #1 consumer complaint in the United States today.

2. In 2016, there were 3,857,627 robo-call complaints reported to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC).[1] That is a dramatic increase from the 2,636,477 and 1,949,603 robocall complaints reported in 2015 and 2014, respectively.

3. In New York, there were 362,390 robo-call complaints reported in 2016.[2]

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 – September 30, 2016*, FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf

[2] *Id.*

1

5. telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

5. Plaintiff, Shabbir Choudhury, alleges Defendant, Receivables Performance Management LLC, robocalled him thirty-three (33) times in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

6. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7. The purpose of the TCPA is to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robo-calls.

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. Per findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## PARTIES IN THE COMPLAINT

10. Plaintiff Shabbir Choudhury (hereinafter "Plaintiff") is a natural person who resides at 88-28 202nd Street, Hollis, NY 11423.

11. Plaintiff is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

12. Defendant Receivables Performance Management LLC is a financial services company headquartered in Washington, with a primary mailing address at 20816 44th Ave W, Lynnwood, WA 98036-7744.

13. Defendant persistently utilized an "Automatic Telephone Dialer", as defined in 47 U.S.C. § 227(a)(1), to call the Plaintiff's cellular telephone, violating the Plaintiff's privacy rights afforded under federal law.

## JURISDICTION

14. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 47 U.S.C. § 227, and pursuant to 28 U.S.C. § 1367 for pendent state law claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action. Injunctive relief is available pursuant to the TCPA.

15. This action arises out of the Defendant's repeated violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* in their efforts to collect an alleged consumer debt.

16. Venue is proper in this District because the Plaintiff may be found in this District, and some of the acts and transactions occurred in this District, and because Plaintiff received multiple collection communications from and on behalf of the Defendant while in New York on the cellular telephone that is the subject of this litigation.

## FACTUAL ALLEGATIONS

17. Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs number ("1 through 16") herein with the same force and effect as if the same were set forth at length herein.

18. Immediately preceding the filing of this claim purposes and for several months prior to, the Defendant attempted to collect from Plaintiff a financial obligation which was for family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a defaulted bill from, Defendant through a campaign of communication which included repeated autodialed calls to the Plaintiff's cell phone.

19. Plaintiff asked that he not be called by automated dialers, but these calls did not cease.

20. On June 27, 2017, Defendant began communicating with Plaintiff by means of telephone calls to Plaintiff's cellphone number (347) 907-5841.

21. Plaintiff, after having received numerous calls from the Defendant, spoke with an agent of the Defendant and requested that the Defendant cease making "robo-calls" to his cellphone number (347) 907-5841.

22. On June 29, 2017, the Plaintiff spoke with the Defendant's agent.

23. Defendant's agent stated: "We've been calling in regards to the past due invoice with Verizon. There's an outstanding balance on this account in the amount of $768.09…"

24. Plaintiff stated: "I am going to make a payment sometime soon because I want to restore the service with them. But in the meantime, I picked up the phone last three days, I couldn't figure out who was calling me. So, last three days you guys been calling me with these robocalls. I think all I'm saying hello, hello, hello and nobody answers. Please stop calling me with these robocalls."

25. Defendant's agent stated: "I'm sorry. We don't mean to not answer. We've been having an issue with our system. Let's go ahead and get a payment set up though. We can set something up for tomorrow or…"

26. Plaintiff stated: "I'll call you guys back and make a payment because right now I'm driving actually."

27. Defendant's agent stated: "When should I expect to hear back from you?"

28. Plaintiff stated: "I'll give you guys a call back tomorrow, sometime tomorrow."

29. Defendant's agent stated: "Ok sir, we need to get this resolved as soon as possible."

30. Plaintiff stated: "Ok. No problem, but right now please make sure that you guys don't call me with these robocalls because I'm keep getting calls."

31. Defendant's agent stated: "Sorry, I didn't understand that."

32. Plaintiff stated: "I said please stop calling me with these auto-dialers. I'm going to make the payment. Don't worry."

33. Defendant's agent stated: "Ok. So, you don't want us to call the…give me one moment."

34. Plaintiff stated: "They've been calling me and I pick up the phone. I'm saying hello, hello, hello and no one answers."

35. Defendant's agent stated: "Right and we've been having issue with our system, but we'll go ahead and …we're working on that, ok?"

36. The call ended shortly after.

37. Despite these requests on the part of the Plaintiff, the Defendant continued to make harassing autodialed calls to his cell phone at all hours of the day causing great stress and hardship to the Plaintiff and his family.

38. On July 6, 2017, the Plaintiff answered the Defendant's phone call.

39. Plaintiff stated "Hello?" four times and no one answered.

40. On July 17, 2017, the Plaintiff answered the Defendant's phone call.

41. Plaintiff stated "Hello?" four times and suddenly one of the Defendant's agent answered.

42. On July 27, 2017, the Plaintiff answered the Defendant's phone call.

43. Plaintiff stated "Hello?" three times and no one answered.

44. On August 4, 2017, the Plaintiff answered the Defendant's phone call.

45. Plaintiff stated "Hello? Hello? Please stop calling me with these robo-calls, please." No one answered.

46. On August 9, 2017, the Plaintiff answered the Defendant's phone call.

47. Plaintiff stated "Hello?" three times and no one answered.

48. Despite Plaintiff revoking consent, the Defendant and its agents continued to repeatedly use an automatic telephone dialing system to call Plaintiff's cellphone in an attempt to collect this alleged debt, at least thirty-three (33) times prior to the commencement of this litigation (See Exhibit A Call Logs).

49. When the Plaintiff was able to speak with an agent of the Defendant, they would routinely refuse to acknowledge the Plaintiff's request to not receive "robo-calls."

50. The Defendant voluntarily and willfully used an auto dialer to place these calls.

51. At no time did the Plaintiff ever give consent for the Defendant to use an auto dialer to place these calls.

## **TELEPHONE CONSUMER PROTECTION ACT**

52. Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs number ("1 through 51") herein with the same force and effect as if the same were set forth at length herein.

53. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

54. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

55. Under the TCPA, the burden is on defendants to demonstrate prior express consent.

56. At all times relevant to this complaint, the Plaintiff was and is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

57. At all times relevant to this complaint, the Defendants have used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

58. The Federal Communications Commission (FCC) was given the authority to issue orders implementing the TCPA. The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase

> agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. **Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.**

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted, bold emphasis added.)

59. The Second Circuit's more recent decision in *Giovanniello v. ALM Media*, LLC, 726 F.3d 107 (2d Cir. 2013), recognized that prior interpretation of §227(b)(3) as giving state courts the authority to set the terms of TCPA claims no longer held true. Based on those precedents, the court held that Federal Rule of Civil Procedure 23, not state law, governs when a federal TCPA suit may proceed as a class action. The Second Circuit noted that Mims triggered a fundamental shift in the way that the court views Section 227(b)(3)'s "if otherwise permitted" language, and "uprooted much of our TCPA jurisprudence." Ultimately, the court found that Federal Rule of Civil Procedure 23 now governs TCPA class actions in Federal Courts.

60. Within the months immediately preceding the filing of this lawsuit, Defendant and its agents telephoned the Plaintiff's cellular telephone number on numerous occasions in violation of the TCPA.

61. Without Plaintiff's prior express consent, Defendant and its collectors and agents repeatedly used an automatic telephone dialing system to call Plaintiff's cellular telephone in an attempt to collect this alleged debt, at least thirty-three (33) times prior to the commencement of this litigation.

62. Oftentimes these phone calls would simply be an automatic message requesting that the Plaintiff call the Defendant.

63. Plaintiff also asked the Defendant numerous times not to call her at his cellular phone number.

64. When the Plaintiff was able to speak to the Defendant's agent, he would request that no "robo-calls" be made to his cell phone number.

65. Despite these requests to not receive "robo-calls" at his cell phone number, neither the "autodialed" calls nor their frequency abated.

66. The frequency of these calls also greatly impacted the Plaintiff's home and work life as well.

67. Plaintiff also began to suffer from extreme stress and physical hardship as a result of the frequency of the calls and his inability to deal with the Defendant in any constructive way.

68. These hardships, caused by the Defendant, directly harmed the Plaintiff's ability to work and earn money, deal with his family, and otherwise lead a healthy and productive life.

69. Throughout this time the Defendant was on specific notice that the phone was a cell phone and that the Plaintiff was specifically requesting that they not call him at that number, making these automated calls to Plaintiff willful.

70. All calls and messages were sent in willful violation of the TCPA because Defendant never obtained the Plaintiff's prior express consent, and had no basis to believe that they had the Plaintiff's prior express consent to make automated calls to his cell phone or to send him prerecorded and/or synthesized messages on his cell phone.

*Summary*

71. All of the above-described collection communications made to Plaintiff by Defendants and other collection employees employed by Defendant, were an invasion of his privacy by the use of repeated calls.

72. According to findings by the FCC, automated calls are prohibited because, as Congress found, such calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

73. The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago*, 394 U.S. 111, 125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471(1980).

74. The Defendant's persistent autodialed calls eliminated the Plaintiff's right to be left alone.

75. These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had.

76. Defendant's actions constituted the unauthorized use of, and interference with the Plaintiff's cellular telephone service for number which the Plaintiff paid money.

77. Plaintiff was charged money for each call that Defendant made to Plaintiff's cellular phone.

## **TCPA AUTODIALERS**

78. The TCPA further provides that "[t]he term 'automatic telephone dialing system' means equipment which has the capacity – (A) to store or produce telephone numbers to be called,

using a random or sequential number generator; and (B) to dial such numbers." (47 U.S.C. § 227(a)(1)).

79. The FCC has interpreted an autodialing telephone dialing system as follows:

Under the TCPA, the term "automatic telephone dialing system" or "autodialer" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." . . . § 227(a)(1). *The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.* See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (2003 TCPA Order). The Commission has, for example, concluded that the scope of that definition encompasses "hardware [that], when paired with certain software, *has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers*," in light of, among other things, its conclusion that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." Id. at 14091-93, paras. 131, 133.

*Soundbite TCPA Ruling*, 15 FCC Rcd. 15391 at ¶ 2, n.5 (emphasis added.)

## CAUSE OF ACTION
### FIRST COUNT
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

80. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

81. The foregoing acts and omissions of Receivables Performance Management LLC constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

82. As a result of Receivables Performance Management LLC's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

83. Plaintiff is also entitled to and does seek injunctive relief prohibiting such conduct violating the TCPA by Receivables Performance Management LLC in the future.

84. Plaintiff is also entitled to an award of attorneys' fees and costs.

## SECOND COUNT
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

85. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

86. The foregoing acts and omissions of Receivables Performance Management LLC constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

87. As a result of Receivables Performance Management LLC's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

88. Plaintiff is also entitled to and does seek injunctive relief prohibiting Receivables Performance Management LLC's violations of the TCPA in the future.

89. Plaintiff is also entitled to an award of attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (b)(1)(a), respectfully requests that the Court:

1. Award statutory damages of $500.00 for each and every violation of the TCPA by the Defendant;

2. Find that the Defendant willfully or knowingly violated the TCPA and increase the statutory damages against the Defendant to $1,500.00 for each and every violation of the TCPA;

3. Enter a judgment in favor of the Plaintiff against Defendant for an amount of damages to be proved at trial;

4. Enjoin the Defendant from further contacting the Plaintiff in violation of the TCPA;

5. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: September 14, 2017

Respectfully submitted,

  **s/Subhan Tariq**
Subhan Tariq, Esq.
Attorney I.D. No. ST9597
The Tariq Law Firm, PLLC
9052 171st Street
Jamaica Estates, NY 11432
Telephone: (516) 900-4529
Facsimile: (516) 453-0490
Email: subhan@tariqlaw.com
**Attorney for Plaintiff**

To:

Receivables Performance Management LLC
20816 44th Ave W
Lynnwood, WA 98036-7744

(via Prescribed service)

Clerk of the Court,
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

(For Filing purposes)